UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTT RODGERS,
Plaintiff,

v.

CORRECTION OFFICER ORCUTT, UNKNOWN CORRECTION OFFICER JOHN DOE, JOE WHITMORE, DR. HOWARD, JOHN SMITH and PLYMOUTH COUNTY,
Defendants.

CIVIL ACTION NO. 04-11842-PBS

**DEFENDANTS JUDITH ORCUTT, JOSEPH WHITMORE AND JOHN SMITH'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants Judith Orcutt, Joseph Whitmore and John Smith have moved the Court to enter summary judgment in their favor and against Plaintiff Scott Rodgers because there is no genuine issue of material fact to be tried as to these Defendants, and each is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. As grounds for this motion, Orcutt, Whitmore and Smith state that there is no genuine issue of material fact to be tried concerning the Plaintiff's allegation that any one or all of these Defendants is liable under 42 U.S.C., § 1983 or under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I. Furthermore, Orcutt, Whitmore and Smith state that they are entitled to qualified immunity on the Plaintiff's allegations against them.

The Complaint consists of four counts, two of which allege liability against Orcutt, Whitmore and Smith, among others. Count II of the Complaint purports to allege "violation of 42 U.S.C., § 1983 by all individual defendants." Count IV alleges "violation of the Massachusetts Civil Rights

Act by all Defendants." Counts I and III are addressed to Co-defendant Plymouth County only.[1] Orcutt, Whitmore and Smith's motion challenges Counts II and IV to the extent that they allege liability against Orcutt, Whitmore and Smith.

The Plaintiff's claims against Orcutt, Whitmore and Smith arise out of an incident which is alleged to have occurred at the Plymouth County Correctional Facility ("PCCF") beginning at or around 11:00 p.m. on August 25, 2001 and continuing into the morning and afternoon of August 26, 2001. On and around the date of the alleged incident, the Plaintiff was an inmate in the custody of the Plymouth County Sheriff's Department at PCCF. Orcutt was a corrections officer who worked the 11:00 p.m. to 7:00 a.m. shift in the Delta North 3 cell block at PCCF beginning on August 25, 2001. Whitmore was a nurse employed by the County of Plymouth at PCCF who was working on August 26, 2001. John Smith was a nurse employed by the County of Plymouth as a medical officer at PCCF. The Plaintiff alleges that Orcutt, Whitmore and Smith deprived him of a federal civil right by their alleged deliberate indifference to his serious medical need which he claims manifested itself during the final hours of August 25, 2001 and into August 26, 2001. Each of the moving defendants denies liability to the Plaintiff.

The essence of the Plaintiff's allegations against Orcutt is that she did not take adequate measures to secure medical attention for him when he allegedly stated to her that he was ill and had vomited blood in the early morning hours of August 26, 2001. Orcutt denies having such a discussion with the Plaintiff and denies that she was deliberately indifferent to any serious medical

---

[1] Count I alleges liability in negligence under the Massachusetts Tort Claims Act, M.G.L. c. 258. Although the heading to this count does not explicitly identify its targets, Orcutt, Whitmore and Smith understand Count I to purport to state a claim against Plymouth County only because they are immune to liability under the Tort Claims Act. M.G.L. c. 258, § 2.

need of the Plaintiff. There is no known independent witness to any conversation in which the Plaintiff allegedly notified Orcutt of his illness. Even accepting the Plaintiff's deposition account of his interaction with Orcutt to be true for purposes of this motion, the Plaintiff's account of Orcutt's alleged conduct in response to his alleged statements does not support a finding of deliberate indifference to his serious medical need, but rather shows efforts promptly made by Orcutt to communicate the Plaintiff's complaints to prison medical services.

The essence of the Plaintiff's allegations against Whitmore is that he did not provide adequate treatment to the Plaintiff when he gave the Plaintiff Maalox in response to his complaints of stomach upset and vomiting on the morning of August 26, 2001. The Plaintiff alleges, and Whitmore denies that Whitmore's failure to recognize the Plaintiff's complaints as indicative of a medical condition more serious than "food poisoning" and failure to treat the Plaintiff differently and more aggressively in response to his complaints of stomach upset constitutes deliberate indifference to a serious medical need. As is shown in the following sections, there is no evidence of deliberate indifference by Whitmore. The evidence demonstrates that Whitmore acted reasonably and immediately upon apprehending a serious medical need on the afternoon of August 26, 2001.

The Complaint against Smith alleges that he too "violated Plaintiff's rights under the Eighth Amendment . . . by demonstrating deliberate indifference to his clearly established right to medical care while in custody," but alleges no specific conduct by Smith upon which this allegation is premised. The lone allegation specific to Smith is that he "was the Medical Unit Supervisor of Plymouth County Commissioners Office" (sic). Plaintiff's counsel has agreed to stipulate to the dismissal of Smith from this lawsuit.

In support of their motion for summary judgment on Count IV, Orcutt, Whitmore and Smith

state that there is no evidence that they interfered with any civil right of the Plaintiff which can support liability under Massachusetts General Laws ch. 12, § 11I by means of "threats, intimidation or coercion." The Plaintiff admitted in his deposition testimony that Orcutt, Whitmore and Smith did not interfere with his civil rights by means of threats, intimidation or coercion, as is alleged in Count IV.

**STATEMENT OF RELEVANT FACTS, ALLEGATIONS AND PROCEEDINGS.**

On and before August 25, 2001, plaintiff Scott Rodgers was incarcerated and was an inmate serving a sentence at PCCF. Complaint, para. 10. The Plaintiff alleges that on days prior to August 25, 2001, he had complained to unidentified "jail medical staff" of "an upset stomach." He attributes his stomach upset to ingestion of pain medication (Naprosyn) which co-defendant Dr. Howard prescribed for him in response to his complaints of knee pain. Complaint, para. 11.

On August 25, 2001, the Plaintiff and four cell mates were locked into their cell for the evening at 10:00 p.m. See Transcript of the Deposition Testimony of Scott Rodgers, page 89, attached to the Defendants motion as Exhibit A. The Plaintiff testified that he fell asleep, but woke up after 11:00 p.m. and vomited into a toilet in his cell. Id., pp. 90-91. The Plaintiff testified that at around 2:00 a.m. on August 26, 2001, he conferred with a cellmate concerning the appearance of his vomit and came to suspect that there was blood in his vomit. Id., pp. 91-94. The Plaintiff claims to have reported his vomiting to an unidentified male corrections officer who is not a party to this motion, sometime after his 2:00 a.m. Id., p. 96-98.

Orcutt is a female corrections officer who worked the 11:00 p.m. to 7:00 a.m. shift at the Delta North 3 unit of PCCF beginning August 25, 2001. Transcript of the Deposition Testimony

of Judith Orcutt, page 21, attached to the Defendants' motion as Exhibit B. At her deposition on June 22, 2006, Orcutt testified that she has no memory of interacting with the Plaintiff on August 25 or 26, 2001. Id., pp. 35-36. Orcutt testified that although she has no present memory of calling the infirmary during the early morning hours of August 26, 2001, she refers all inmate requests for medical attention for serious conditions to the prison medical staff. Id., pp. 17-20.

The Plaintiff claims that he spoke with Orcutt on two occasions during the early morning hours of August 26, 2001. Rodgers depo., p. 102. When the Plaintiff asked Orcutt to speak with him, she came to the cell door and listened to him. Id., pp. 99-100, 102-104, 107. The Plaintiff claims that he told Orcutt that he was sick and had vomited. Id., pp. 102-103. Orcutt allegedly stated that she would call the nurse on duty, and subsequently informed the Plaintiff, within an hour of this first alleged discussion, that she had done so. Id., pp. 102, 104-105. When Orcutt allegedly spoke with the Plaintiff on the second occasion, she told him that she had called medical services for him and agreed to do so a second time. Id., pp. 104-106. The Plaintiff does not know whether Orcutt called prison medical staff for him as she allegedly stated she had done. Id., pp. 105-106. Orcutt's shift ended at 7:00 a.m. the morning of August 26, 2001. The Plaintiff was sufficiently healthy to report for distribution of medicine by prison medical staff at 9:00 a.m. the morning of August 26, 2001. Id., p. 108.

At 9:00 on the morning of August 26, 2001, the Plaintiff walked from his cell to the common area of Delta North 3 where Whitmore was distributing prescribed medication to inmates. Rodgers depo., p. 108. The Plaintiff claims that Whitmore asked him "what's the matter," and alleges that he told Whitmore "I'm really sick" and explained that he had vomited blood. Id. To Whitmore's observation, the Plaintiff had a "healthy" appearance and looked "ok." Transcript of the Deposition

{K0329746.1}

Testimony of Joseph Whitmore, page 49, attached to the Defendants' motion as Exhibit C. The Plaintiff alleges that Whitmore said that he was likely suffering from food poisoning and gave him Maalox to calm his stomach. Rodgers depo., pp. 105-106. The Plaintiff accepted the Maalox and returned to his cell to rest.

The afternoon of August 26, 2001, the Plaintiff reported to the infirmary where he complained to Whitmore of stomach upset. Id., p. 112. The Plaintiff walked into the infirmary alone and on his own strength. Whitmore depo., pp. 47-48. When the Plaintiff entered the infirmary Whitmore observed that he looked "pale and sweaty and sick, uncomfortable." Id., p. 49. Whitmore took the Plaintiff's vital signs and determined that the Plaintiff had low blood pressure and a high pulse. Id., p. 47. Based on his observation of the Plaintiff's changed appearance and alarming vital signs, Whitmore acted immediately to transport Plaintiff to Jordan Hospital for examination and treatment. Rodgers depo., pp. 112-113; Whitmore depo., p. 47. At Jordan Hospital, the Plaintiff was examined further and was treated successfully for a gastro-intestinal bleed.

According to the Plaintiff, Whitmore spoke with him after he was treated at Jordan Hospital and said that he had not known on the morning of August 26, 2001 that the Plaintiff was seriously in need of medical assistance. Rodgers depo., pp. 110-113. The Plaintiff testified that he believes that Whitmore did not know of any serious medical need of his before he was seen in the infirmary the afternoon of August 26, 2001. Id. at p. 111. The Plaintiff does not contend that Whitmore knew on the morning of August 26 that he was very sick but decided not to help him. Id.

The Plaintiff admits that Orcutt did not threaten, intimidate or coerce him. Id., pp. 174-175. The Plaintiff admits that Whitmore did not threaten, intimidate or coerce him. Id., pp. 174-175. The Plaintiff admits that Smith did not threaten, intimidate or coerce him. Id., pp. 174-175. The Plaintiff

never spoke with Smith. Id., p. 175.

Officer Orcutt, Mr. Whitmore and Mr. Smith incorporate the factual statements and evidence contained in their Concise Statement of Undisputed Material Facts by reference.

## ARGUMENT

### I. THE LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted and applied in a way that allows courts to accomplish this purpose. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present fact that show a genuine issue for trial. *See* Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir.1997); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841-42 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398 (1994). "[T]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986); Torres v. E.I. DuPont de Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000).

Consequently, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir.1994).

Orcutt, Whitmore and Smith's motion is based, in part, on their entitlement to qualified immunity. Qualified immunity is a question of law which should be decided by the court before trial, and not by the jury. *See* Hunter v. Bryant, 502 U.S. 224, 227 (1991); Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994). The question to be decided on a motion for summary judgment based on qualified immunity is whether the evidence is such that "a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995). A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Lowinger, 50 F.3d at 65; Cookish v. Powell, 945 F.2d 441, 443 (1st Cir.1991). Summary judgment is proper when a court determines that a jury could not find that the defendant's conduct was so deficient that no reasonable officer could have made the same choice. *See* Napier v. Town of Windham, 187 F.3d 177, 183 (1st Cir.1999).

## II. THE COURT SHOULD ALLOW ORCUTT, WHITMORE AND SMITH'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE PLAINTIFF CANNOT PROVE THAT THEY WERE DELIBERATELY INDIFFERENT TO HIS SERIOUS MEDICAL NEED.

The Court should allow the Defendants' motion for summary judgment because the Plaintiff cannot prove that Orcutt, Whitmore or Smith deprived him of his Eighth Amendment right to be free from deliberate indifference to his serious medical needs while in custody. As there is no evidence that Orcutt, Whitmore or Smith knew of any serious medical need of the Plaintiff before Whitmore took the Plaintiff's vital signs, and as there is no evidence that any Defendant was deliberately indifferent to any such serious medical need, there is no genuine issue which can fend off judgment

{K0329746.1}

in favor of Orcutt, Whitmore and Smith.

While it is settled in law that deliberate indifference to the serious illness or injury of prisoners can constitute a violation of the prisoner's civil rights which can support liability under 42 U.S.C. § 1983, *See* Estelle v. Gamble, 428 U.S. 97, 97 S.Ct. 285 (1976), there is no evidence that Orcutt, Whitmore and Smith were deliberately indifferent to a serious medical need of this Plaintiff. Mere negligent or inadvertent failure to provide medical care to prisoners does not rise to the level of a constitutional violation. *See* Id. at 105, 97 S.Ct. at 291.

A. The Plaintiff Has No Proof Of Any "Serious Medical Need" Which Was Known To Orcutt, Whitmore Or Smith Before The Afternoon Of August 26, 2001.

Where prisoners allege liability by reason of denial of medical treatment, proof of deprivation of an Eighth Amendment right requires proof that the challenged government action constituted "deliberate indifference" to a "serious medical need." *See* Consolo v. George, 58 F.3d 791, 793-94 (1st Cir.1995); Bowen v. City of Manchester, 966 F.2d 13, 17, n. 13 (1st Cir.1992). The Plaintiff cannot prove that he had a serious medical need diagnosed prior to August 25, nor can he prove that he had a need so obvious that a lay person could easily recognize the need for treatment before he went to the infirmary on August 26.

The Plaintiff must first produce evidence that he was suffering from a serious medical need. A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is "so obvious" that a lay person would "easily" recognize the need for medical treatment. *See* Gaudreault v. Municipality of Salem, Massachusetts, 923 F.2d 203, 208 (1st Cir.1990). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment. Id. There is no evidence that the Plaintiff suffered any harm by reason of

{K0329746.1}

any delay in treatment between the alleged 2:00 p.m. report to Orcutt, his alleged 9:00 a.m. discussion with Whitmore and his transportation to Jordan Hospital hours later.

1. The Is No Evidence That The Defendants Were Aware Of Any Serious Medical Need Of The Plaintiff Before The Afternoon Of August 26, 2001.

The Plaintiff cannot meet the first requirement of proof of a claim under the Eighth Amendment because there is no evidence that he was suffering from a "serious" medical need before he arrived at the infirmary the afternoon of August 26. Prior to appearing in the infirmary in a state which Whitmore recognized then as potentially indicative of an ulcer or gastrointestinal bleed, the Plaintiff did not manifest any medical need so obvious that a lay person would easily recognize the Plaintiff's need for a doctor's attention. *See* Gaudreault, 923 F.2d 203, 208 (1st Cir.1990). It is undisputed that Whitmore acted promptly and reasonably on the information which he received concerning the Plaintiff the afternoon of August 26.

The allegations and evidence demonstrates that in the days preceding discovery of the Plaintiff's gastrointestinal bleed, the Plaintiff was seen at least twice daily by a medical professional while at the PCCF for distribution of his several twice-daily medications. While the Plaintiff contends that he informed Orcutt that he was feeling sick and vomiting, nausea and vomiting is not, on its own, sufficient to establish that the plaintiff had a "serious" medical need for purposes of his constitutional claim against the defendants. *See e.g.* McNally v. Prison Health Services, 46 F.Supp.2d 49, 53 (D.Maine 1999) (noting fact that plaintiff was diagnosed with HIV was not sufficient to establish serious medical need for constitutional claim). The Plaintiff showed no outward symptoms of serious illness or medical distress other than his alleged reports of nausea and vomiting prior to appearing in the infirmary the afternoon of August 26, 2001. Vomiting is a

common to any number of conditions ranging from mild causes such as overeating, indigestion, psychosomatic illness, food poisoning and/or common stomach viruses to potentially more serious injuries or illnesses. A report of vomiting without other outward signs of more serious injury or illness does not make obvious a need for medical attention.

The Plaintiff had a "healthy" or "ok" appearance when seen by Whitmore at the distribution of medicine at around 9:00 a.m. the date of the Plaintiff's hospitalization. According to Whitmore, the Plaintiff's outward appearance differed considerably later in the afternoon of August 26. Orcutt's shift ended at 7:00 a.m. the morning of August 26 and she was not present when the Plaintiff later presented himself to Whitmore with a healthy outward appearance and complaints of stomach upset.

There is likewise no evidence that Whitmore appreciated or understood that the Plaintiff was in serious medical need before the Plaintiff arrived at the infirmary during the afternoon of August 26. As stated above, Whitmore recalls that the Plaintiff had a healthy appearance notwithstanding of his complaint of stomach upset. Whitmore allegedly identified the likely cause of the Plaintiff's reported symptoms as "food poisoning" and provided the Plaintiff with Maalox, an over-the-counter medication used to calm stomach upset. The Plaintiff has testified that he believed Whitmore when Whitmore allegedly told him after August 26 that he was not aware of any serious medical need of the Plaintiff when he saw the Plaintiff on the morning of August 26. Moreover, Whitmore's rapid response to the Plaintiff's physical appearance and troubling vital signs the afternoon of August 26 undercuts the Plaintiff's contention that Whitmore was deliberately indifferent to a serious medical need earlier that day.

2. There Is No Evidence That Orcutt, Whitmore and Smith Were Deliberately Indifferent To The Plaintiff's Serious Medical Need.

The Court should allow Orcutt, Whitmore and Smith's motion for summary judgment because there is no evidence that any of these individuals was deliberately indifferent to any serious medical need of the Plaintiff. Absent evidence to support the Plaintiff's claim, Orcutt, Whitmore and Smith are entitled to judgment as a matter of law.

When liability for serious harm or death is at issue based on alleged deliberate indifference to the serious medical need of a person in custody, the Plaintiff must demonstrate deliberate indifference by establishing (1) an unusually serious risk of harm, (2) the defendant's actual knowledge of or, at least, willful blindness to that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. *See* Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir.1992). The risk, the knowledge, and the failure to do the obvious must show that the defendant is deliberately indifferent to the harm that follows. *See* Id. Furthermore, to establish deliberate indifference, the Plaintiff must prove that each liable Defendant had a culpable state of mind and intended wantonly to inflict pain. *See* DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir.1991). The culpable state of mind is "recklessness", as it is used in the criminal law sense, requiring actual knowledge of impending harm easily preventable. Id. "Mere negligence does not rise to the level of a constitutional violation." Estelle v. Gamble, 429 U.S. at 105, S.Ct. at 291.

Although state of mind issues such as deliberate indifference often present a jury question, where, as here, there is no evidence of a lack of treatment "so inadequate as to shock the conscience, let alone that any deficiency was intentional" nor "evidence of acts or omissions so dangerous that a defendants knowledge of a large risk can be inferred," summary judgment is appropriate. Toracco v.

Maloney, 923 F.2d 231, 234 (1st Cir. 1991); Berman v. Sires, 834 F.2d 9, 13 (1st Cir. 1987). There is no evidence in the present case of conscience shocking omissions, intentional deprivation nor conduct sufficiently dangerous to infer that the Defendants had actual knowledge of a large risk to the Plaintiff's safety. Accordingly, the Court should allow Orcutt, Whitmore and Smith's motion.

a. Orcutt Was Not Deliberately Indifferent.

The Plaintiff can offer no evidence support of his claim that Orcutt was deliberately indifferent to his alleged serious medical need. Orcutt denies any memory of interacting with the Plaintiff on the night of August 25, 2001. The Plaintiff, however, recounts two conversations which he claims to have had with Orcutt sometime after 2:00 a.m. and before the end of her shift at 7:00 a.m. In the first purported conversation with Orcutt, the Plaintiff claims that he expressed to her that he was sick and wished to see a doctor. The Plaintiff alleges that Orcutt listened to his concerns and agreed to contact the infirmary to communicate his alleged condition to the infirmary staff. The Plaintiff alleges that Orcutt, in the second of two discussions, reported that she had contacted the infirmary concerning the Plaintiff and agreed to contact the infirmary again at the Plaintiff's request.

The Plaintiff can produce no evidence that Orcutt did not call the infirmary as requested.[2] Moreover, although Orcutt seemed "busy", the Plaintiff admitted that Orcutt took time to listen to him and spoke to his concerns. There is no basis in the Plaintiff's account of Orcutt's conduct to infer that Orcutt intended wantonly to inflict pain on the Plaintiff. Orcutt's conduct toward the Plaintiff, even as the Plaintiff alleges it took place, does not support the conclusion that Orcutt was of deliberately indifferent to any serious medical need of the Plaintiff.

---

[2] Officer Orcutt has no memory of calling the infirmary and no memory of conversing with the Plaintiff concerning

{K0329746.1}

b. Whitmore Was Not Deliberately Indifferent.

The available evidence does not support the Plaintiff's allegation of deliberate indifference by Whitmore. The alleged interaction between the Plaintiff and Whitmore at issue in this lawsuit began at medication call at 9:00 a.m. on August 26, 2001 and ended later that afternoon when the Plaintiff was taken to Jordan Hospital at Whitmore's direction.

Whitmore recalls that the Plaintiff had a "healthy" appearance when he appeared in line the morning of August 26 for his prescribed medication. Accepting the Plaintiff's allegations as true for the purposes of this motion, the Plaintiff conferred with Whitmore concerning his reported nausea and vomiting and Whitmore concluded that the Plaintiff was likely suffering from "food poisoning." Whitmore offered the Plaintiff Maalox to calm his stomach, and directed him to drink water and to rest. The Court should not second guess healthcare professionals where, as here, the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment. Caton v. Watson, 984 F.2d 537, 540 (1st Cir. 1994); Berman, 834 F.2d at 13. The Plaintiff accepted and took the Maalox offered him, and returned to his cell to lie down. Later that day when the Plaintiff arrived at the infirmary looking "pale, sweaty, sick (and) uncomfortable," Whitmore promptly took the Plaintiff's vital signs and acted with considerable urgency to transport the Plaintiff to Jordan Hospital. Urgent and immediate action by Whitmore to transport the Plaintiff to Jordan Hospital upon perceiving a significant threat to the Plaintiff's health is obviously not consistent with the deliberate indifference which the Plaintiff must prove to prevail.

---

his stomach upset.

III. ORCUTT, WHITMORE AND SMITH ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Qualified immunity is not merely a defense to liability, it is immunity from suit. *See* Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985). Qualified immunity analysis requires the Court to ask "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." McBride v. Taylor, 924 F.2d 386, 389 (1st Cir.1991); *see* Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987). The analysis employed to determine whether an official is entitled to summary judgment is generous. "A reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir.1995) *citing* Cookish v. Powell, 945 F.2d 441, 443 (1st Cir.1991). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.*; Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir.1992).

A. Orcutt Is Entitled To Qualified Immunity.

Orcutt is entitled to qualified immunity because her actions in relation to the Plaintiff, even accepting as true the Plaintiff's allegations, was objectively reasonable under the circumstances. The Plaintiff concedes, as he must, that he did not express to Orcutt or to any person that he was having a medical emergency but rather stated that he was sick and was vomiting blood. The Plaintiff alleges that Orcutt spoke with him twice within a span of approximately 1 hour sometime after 2:00 a.m.

concerning his sickness. On the first occasion, Orcutt allegedly stated that she would communicate the Plaintiff's concerns to the prison medical staff. On the second occasion Orcutt confirmed to the Plaintiff that she had called the prison medical staff concerning the Plaintiff and acceded to the Plaintiff's request that she do so a second time. It was objectively reasonable for a corrections officer such as Orcutt to refer an inmates expressed feelings of sickness or discomfort to the prison medical staff and thereafter to leave it to qualified medical professionals to assess the urgency of the situation.

Furthermore, it was reasonable for Orcutt to respond to a prisoner's report that he had vomited by reporting the matter to health services and directing the Plaintiff to rest, notwithstanding that later medical examination many hours later would disclose that the Plaintiff was suffering from a condition more serious than it had originally appeared. There is no evidence that any failure to refer the Plaintiff to a hospital during the early morning hours of August 26, 2001 caused him any harm which did not exist prior to his alleged discussion with Orcutt. Testimony from a nurse that that the Plaintiff looked "healthy" and "ok" when he walked to the medication distribution line at 9:00 a.m. is indicative of the fact that the Plaintiff was not in need of emergency medical services before 9:00 a.m., a full two hours after Orcutt's shift ended.

B. Whitmore Is Entitled To Qualified Immunity.

Whitmore is entitled to qualified immunity because his actions in relation to the Plaintiff, even accepting as true the Plaintiff's allegations, was objectively reasonable under the circumstances. The Plaintiff alleges that on the morning of August 26, 2001, he told Whitmore that he was feeling sick and had vomited blood. Notwithstanding of the Plaintiff's alleged statement, the Plaintiff had walked to medicine distribution on his own power and had a physical appearance which appeared to

be otherwise healthy and "ok." Given Whitmore's physical observation of the Plaintiff's outward appearance, it was objectively reasonable for Whitmore to offer the Plaintiff Maalox to calm his stomach, and to direct him to drink water and to rest.

Whitmore's actions in the infirmary later on August 26 were also objectively reasonable and lend context to the actions alleged earlier in the day. On the afternoon of August 26, the Plaintiff came to the infirmary and appeared to be pale, sweaty, sick and uncomfortable. Whitmore took the Plaintiff's vital signs and came to believe that the Plaintiff was possibly in need of immediate medical attention. It was objectively reasonable for Whitmore to arrange for the Plaintiff's immediate transport to Jordan Hospital for further examination and treatment.

IV. THE COURT SHOULD ALLOW ORCUTT, WHITMORE AND SMITH'S MOTION FOR SUMMARY JUDGMENT ON COUNT IV BECAUSE THERE IS NO EVIDENCE THAT ORCUTT, WHITMORE OR SMITH INTERFERED WITH THE PLAINTIFF'S CIVIL RIGHTS BY MEANS OF THREATS, INTIMIDATION OR COERCION.

The Court should allow Orcutt, Whitmore and Smith's motion for summary judgment on Count IV of the Complaint because there is no evidence that these defendants interfered with the Plaintiff's civil rights by use of "threats, intimidation or coercion." Since the Plaintiff cannot prove such an interference by these defendants, each is entitled to judgment on Count IV as a matter of law.

The Massachusetts Civil Rights Act ("MCRA") provides a cause of action for individuals whose civil rights have been interfered with by "threats, intimidation or coercion." *See* M.G.L. c. 12, § 11H. In order to prove liability under MCRA, a plaintiff must prove that:

> (1) his exercise or enjoyment of right secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.

Mass. Gen. Laws ch. 12, § 11I; Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989). Leaving aside the first two prongs of the test, the Plaintiff cannot prevail on Count IV because Orcutt, Whitmore and Smith did not interfere with his rights by use of threats, intimidation or coercion.

At his deposition, the Plaintiff conceded that Orcutt, Whitmore and Smith had not interfered with his civil rights by use of threats, intimidation or coercion. The allegation made is more accurately one of deliberate inattention to a need of the plaintiff, namely his

{K0329746.1}

need for pre-accident medical assistance. Since the plaintiff cannot prove interference by Orcutt, Whitmore and Smith by means of threats, intimidation or coercion, the Court should allow the defendants motion for summary judgment on Count IV.

**CONCLUSION.**

For the reasons stated above, Orcutt, Whitmore and Smith respectfully move the Court to allow their motion for summary judgment and to enter Judgment in their favor.

Respectfully submitted,

The Defendants,
CORRECTION OFFICER ORCUTT,
JOSEPH WHITMORE and JOHN SMITH,
By their attorney,

/s/ William P. Breen, Jr.
William P. Breen, Jr., BBO No. 558768
Eckert Seamans Cherin & Mellott, LLC
One International Place, 18th Floor
Boston, MA 02110
Telephone: (617 342-6887
Fax: (617) 342-6899

Dated: August 18, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 28, 2006.

/s/ William P. Breen, Jr.