UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT RODGERS )<br>    Plaintiff )<br> )<br>V. )<br> )<br>CORRECTION OFFICER ORCHID, )<br>UNKNOWN CORRECTION OFFICER )<br>JOHN DOE, JOE WHITMORE, DR. )<br>HOWARD, JOHN SMITH, PLYMOUTH )<br>COUNTY )<br>    Defendants ) | CIVIL ACTION NO.:  04-11842-PBS |

**MEMORANDUM IN SUPPORT OF MOTION OF THE DEFENDANT, JOHN B. HOWARD, M.D., FOR SUMMARY JUDGMENT**

I.    INTRODUCTION

The plaintiff, Scott Rodgers, has filed this action seeking monetary damages against all of the above-captioned defendants, including defendant John B. Howard, M.D. ("Dr. Howard"). (See Plaintiff's Complaint, a copy of which is attached hereto as Exhibit "A").  The plaintiff's Complaint alleges that Dr. Howard is liable under 42 U.S.C. §1983 for the violation of rights protected under the Eighth and Fourteenth Amendments to the U.S. Constitution, and that Dr. Howard is liable under the Massachusetts Civil Rights Act, Mass. G.L. c. 12, § 11I, for the violation of protected rights through "threats, intimidation, or coercion."  (See Exhibit "A", Counts II and IV of the Complaint).  The remaining counts, for violation of the State Tort Claims Act, Mass. G.L. c. 258, and for a separate violation of 42 U.S.C. § 1983, are made against the codefendant Plymouth County only, and do not apply to Dr. Howard.

The evidence presented in this matter demonstrates that the plaintiff will be unable to prove that Dr. Howard was deliberately indifferent to a serious medical need.  Furthermore, the plaintiff will be unable to prove that Dr. Howard violated, or attempted to violate, any of the

plaintiff's protected civil rights through the use of threats, intimidation, or coercion. Therefore, Dr. Howard is entitled to summary judgment on all counts of the plaintiff's Complaint.

## II.   FACTUAL BACKGROUND

The plaintiff's allegations stem from his imprisonment in the Plymouth County Correctional Facility in August of 2001.  (Exhibit "A", para. 10).  The plaintiff alleges that on the night of August 25, 2001, he began to feel dizzy and vomit blood, and that despite his requests for medical attention, he was denied treatment until the afternoon of August 26, 2001, when he was taken to a hospital. (Exhibit "A", para. 11-18).  He alleges that while at the hospital, he was treated for bleeding in his stomach. (Exhibit "A", para. 20).  The complaint further alleges that the plaintiff had been treated with Naprosyn while imprisoned, and he alleges a relationship between this medication and his injuries. (Exhibit "A", para. 21-22; see, also, Deposition of Scott Rodgers, excerpts of which are attached hereto as Exhibit "B", pp. 20-21). He further alleges that the Naprosyn was administered in "crushed form," and that this form of administration is also related to his injuries. (Exhibit "A", para. 22; Exhibit "B", p. 48).

The medical records indicate that on August 7, 2001,  Dr. Howard examined the patient and prescribed Naprosyn, to be administered twice daily, for pain related to a knee problem.  See Affidavit of John B. Howard, M.D. and attached exhibits, attached hereto as Exhibit "C", para. 4; Deposition of Joseph Whittemore, R.N., excerpts of which are attached hereto as Exhibit "D", pp. 27-30).  There are no further records indicating that the plaintiff complained to Dr. Howard concerning stomach pain, or that Dr. Howard was contacted concerning the plaintiff's complaints of stomach pain until August 26, 2001, when Dr. Howard gave telephone orders that the plaintiff be transferred to Jordan Hospital.  (Exhibit "C", para. 6).

The plaintiff testified that he began to experience stomach pain three to four weeks after Dr. Howard prescribed Naprosyn, and that at that time he began requesting medical attention for

his pain. (Exhibit "B", pp. 48-49). It should be noted that the plaintiff's testimony is somewhat confused on this issue, as he testified at one point that he wrote several letters and filed several grievances concerning his stomach pain and the failure of the jail staff to allow him to see a physician (Exhibit "B", pp. 48-49, 59-60, 68-69), but he also testified that he did not experience stomach pain until the night of August 25, 2001, and that his complaints prior to that time concerned only a nauseous feeling and his nonspecific opinion that "something wasn't right" with his treatment.  (Exhibit "B", pp. 78-79).

      Whatever the nature of the plaintiff's complaints to jail staff, he testified that he was not allowed to see a doctor concerning his stomach complaints until August 26, 2001, when he was taken to the hospital. (Exhibit "B", pp. 53-56, 68, 73-74, 108-109). The plaintiff does not allege that Dr. Howard was notified of his complaints and refused to see him, nor has he presented any evidence regarding such an allegation. The absence of evidence that Dr. Howard was aware of the plaintiff's stomach complaints is corroborated by the medical records, as well as the testimony of Nurse Whittemore and Corrections Officer Judith Orcutt. Nurse Whittemore testified that he first learned of the plaintiff's stomach complaints on the morning of August 26, 2001, and that he did not notify Dr. Howard of the plaintiff's stomach complaints and condition until the afternoon of August 26, 2001, when the plaintiff was transferred to the hospital. (Exhibit "D", pp. 38-39, 54-55, 79-80, 82-84). Officer Orcutt did not recall contacting any medical personnel regarding the plaintiff's condition on August 25, 2001 or August 26, 2001. (See Deposition of Judith Orcutt, excerpts of which are attached hereto as Exhibit "E", p. 27). Although the plaintiff testified that Officer Orcutt told him she would call medical personnel (Exhibit "B", pp. 103-105), there is no evidence that such a call reached Dr. Howard even if it was made.

3

Despite the plaintiff's claims that the Naprosyn was crushed before it was administered, there is no evidence that Dr. Howard was aware of or involved in this procedure if it was undertaken.  Dr. Howard testified that he did not order or request medical personnel to crush Naprosyn before giving it to the plaintiff, and he is not aware that the Naprosyn was crushed before being given to the plaintiff.  (Exhibit "C", paras. 7-8).  Nurse Whittemore also testified that it was not necessary to crush Naprosyn before its administration, that he did not crush Naprosyn, and that Dr. Howard did not tell him to crush Naprosyn.  (Exhibit "D", pp. 22-23, 33).

### III.  ARGUMENT

A motion for summary judgment should be allowed where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  See, also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Roche v. John Hancock Mutual Life Insurance Company, 81 F.3d 249, 253 (lst Cir. 1996); McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995); Crawford v. Lamantia, 34 F.3d 28, 31 (1st Cir. 1994).  When the moving party is a defendant, his burden need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.  See Crawford, 34 F.3d at 31; Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

    **A.** **Dr. Howard is Entitled to Summary Judgment on the Plaintiff's Claim for Relief Under 42 U.S.C. § 1983 Because the Plaintiff Cannot Present Evidence Showing that Dr. Howard was Deliberately Indifferent to a Serious Medical Need.**

In order to establish an Eighth Amendment violation, the plaintiff must show that Dr. Howard was deliberately indifferent to a serious medical need.  DesRosiers v. Moran, 949 F.2d

4

15, 18 (1st Cir. 1991), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Proof of a violation requires both an objective showing that the deprivation was sufficiently serious, as well as a subjective showing that the defendant's state of mind evinced deliberate indifference, as by an intentional, wanton, or reckless deprivation of care. Id. While recklessness can be shown by denial, delay, or interference with necessary care or "known needs," the standard requires recklessness in the criminal sense, meaning "actual knowledge of impending harm, easily preventable." Id. at 19. Deliberate indifference is shown only if the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This subjective prong is the same whether the defendant is a medical professional or other official. Steele v. Choi, 82 F.3d 175, 179 (7th Cir. 1996) (citing Farmer).

       **1.**    **There is no evidence that the plaintiff had a serious medical need when he was examined by Dr. Howard on August 7, 2001.**

While the plaintiff's theory of liability concerning an Eighth Amendment violation by Dr. Howard is unclear, it is apparent that the plaintiff must show some subjective, culpable knowledge on Dr. Howard's part at some point between August 7, 2001, and August 26, 2001. No such evidence is present. The undisputed facts, viewed in the light most favorable to the plaintiff, demonstrate that Dr. Howard saw the plaintiff on August 7, 2001, and that at that time he prescribed Naprosyn. There is no indication that the plaintiff complained of stomach pain on August 7, 2001, nor is there evidence that he complained of stomach pain to Dr. Howard at any other time.

     Therefore, as of August 7, 2001, there is no evidence that the plaintiff had a "serious medical need," with respect to his stomach condition, as required by the objective prong of the

5

Eighth Amendment analysis.  A medical need is serious if it "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.1990).  Under this standard, the plaintiff did not exhibit a serious medical need with regard to his stomach condition on August 7, 2001, when he was examined by Dr. Howard.

### 2. There is no evidence that Dr. Howard was deliberately indifferent to a serious medical need when he examined the plaintiff on August 7, 2001.

Although the plaintiff claims that Dr. Howard should not have prescribed Naprosyn on August 7, 2001, there is no evidence that Dr. Howard's conduct in prescribing the medication was the result of a conscious disregard of the plaintiff's medical needs, or that it fell so far below professional standards that it could be considered evidence of an absence of medical judgment and the wanton infliction of pain.  The plaintiff has presented no evidence that Dr. Howard's prescription of Naprosyn was anything other than a professional medical judgment.

Where treatment has been rendered by a medical professional and the dispute concerns its adequacy, courts are reluctant to allow claims for medical malpractice to be transformed into claims for deliberate indifference.  "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  In order to show that a physician's treatment is the result of deliberate indifference rather than mere inadvertence, a plaintiff must show that "the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."  Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996).  Therefore, even if the plaintiff has stated a cognizable medical malpractice claim concerning Dr. Howard's conduct, such a claim does not rise to the level of

6

deliberate indifference without some evidence showing Dr. Howard's knowing failure to treat the plaintiff's condition, such that the decision represents not only a departure from, but the absence of, professional judgment. No such evidence has been presented.

The absence of professional medical judgment must be shown by presenting evidence not merely that the risk was knowable, but that the physician had actual knowledge of an excessive risk and disregarded it. Farmer, 511 U.S. at 837; Brown v. Mitchell, 308 F.Supp.2d 682, 707-708 and n.30 (E.D.Va. 2004). While the subjective prong of an Eighth Amendment claim ordinarily is referred to as a factual question, courts reviewing summary judgment motions often have found, as a matter of law, that evidence in particular cases is insufficient to create a question for trial. See, e.g., Self v. Crum, 439 F.3d 1227, 1233-1234 (10th Cir. 2006) (insufficient evidence that physician recognized symptoms as indicative of heart condition and ignored them); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (no evidence that physicians had actual knowledge of pituitary tumor); Durham v. Nu'Man, 97 F.3d 862, 869 (6th Cir. 1996) (evidence insufficient to show that physicians were aware of broken arm and neglected it); Steele v. Choi, 82 F.3d 175, 179 (7th Cir. 1996) (no evidence that physician aware of subarachnoid hemorrhage); Ralk v. Lincoln County, 81 F.Supp.2d 1372, 1377-1378 (S.D.Ga. 2000) (physician not liable for failure to treat inmate where there was no evidence he received plaintiff's complaints of back pain); and Higgins v. Correctional Medical Services of Illinois, 8 F.Supp.2d 821, 829-830 (N.D.Ill. 1998) (insufficient evidence that physician had actual knowledge of plaintiff's condition). In each of these cases courts recognized the subjective standard of deliberate indifference requires showing that the physician made a treatment decision with actual knowledge that the decision subjected the plaintiff to a substantial and unnecessary risk. Self, 439 F.3d at 1231-1232; Johnson, 145 F.3d at 168; Steele, 82 F.3d at 178-179; Higgins, 8 F.Supp.2d at 829.

In Estelle v. Gamble, supra, the United States Supreme Court cautioned against allowing actions sounding in negligence to proceed as claims for deliberate indifference, and upheld the dismissal of a plaintiff's claim against a treating physician. Id., 429 U.S. at 105-107. The court noted that the plaintiff had been treated for his back injury on numerous occasions, and that his claims against his physicians concerned disagreement over the diagnosis and form of treatment chosen, which were medical judgments and decisions. Id. at 107. Such medical decisions, the Court held, are not sufficient basis for a claim of cruel and unusual punishment. Id.

In Torraco v. Maloney, 923 F.2d 231, (1st Cir. 1991), the plaintiff's administratrix alleged that her son's suicide was the result of deliberate indifference. The First Circuit Court of Appeals upheld a summary judgment ruling because the conduct of the defendant prison officials, including that of a prison psychologist, failed to raise a legitimate question of deliberate indifference. Id. at 236. The court found that although the inmate presented a suicide risk, there was no evidence that the prison psychologist's treatment was "so inadequate as to shock the conscience" where he scheduled the plaintiff for counseling sessions but did not place the inmate on a suicide watch. Id. While the court stated that the facts might have given rise to a claim of negligence, the evidence was insufficient to show that the psychologist's conduct was so dangerous that his awareness of a great risk of harm could be inferred. Id.

It should also be noted that the plaintiff has failed to present any expert evidence in support of his claim that Dr. Howard was deliberately indifferent. Although there appears to be a split of opinion concerning whether expert opinion evidence is necessary to support a claim of deliberate indifference against a physician, courts that have found expert opinion is not required have done so in limited circumstances and with qualification. See Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994) (expert testimony not required where jury could infer deliberate indifference from doctor's failure to inform plaintiff of broken pins in hip for one year); McCabe

8

v. Prison Health Services, 117 F.Supp.2d 443, 451-452 and n.8 (E.D.Pa. 1997) (no general requirement for expert testimony, and none required where claim is denial of treatment rather than inadequate care); Petrichko v. Kurtz, 117 F.Supp.2d 467, 473-474 (E.D.Pa. 1997) (expert testimony on causation of damages not required to defeat summary judgment where plaintiff claimed two-week denial of treatment for shoulder injury).  By contrast, courts that have found expert opinion generally necessary have done so in light of factual circumstances showing that proof of medical standards will be necessary to show that a physician's conduct fell below professional requirements, because only then will a plaintiff be able to present evidence that the alleged inadequate treatment was also the product of deliberate indifference.  See Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (whether misdiagnosis constitutes deliberate indifference often requires expert testimony); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (whether misdiagnosis amounts to deliberate indifference requires expert testimony); Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (declining to interpret Rogers as requiring expert testimony to show that conduct was deliberately indifferent, but recognizing "the logical proposition that expert exploration is required to aid the jury in determining the threshold standard of medical care.")

     Despite the apparent contradiction among these cases, the approaches of McCabe and Miltier are consistent, in that each assesses the factual circumstances presented to determine whether expert testimony is necessary to support a claim.  In McCabe, expert testimony was considered unnecessary because the plaintiff alleged denial of treatment rather than inadequate treatment.  McCabe, 117 F.Supp.2d at 451 n.8.  In such a case, assuming that evidence of subsequent treatment would reveal the existence of a serious medical condition, expert testimony may not be necessary if the facts concerning denial of care present issues that a jury can decide without the aid of an expert.  Cf. Haggerty v. McCarthy, 344 Mass. 136, 139 (1962) (expert testimony required to support medical malpractice claim in all but exceptional cases).  In a case

such as this, however, to the extent the plaintiff alleges that Dr. Howard's prescription of Naprosyn was deliberately indifferent, such a claim cannot go forward without evidence that Dr. Howard prescribed the medication despite knowing that his conduct created an excessive risk of harm to the plaintiff's stomach. Without direct evidence of Dr. Howard's knowledge, such a claim can only be supported by providing evidence showing that the treatment decision in fact created the excessive risk claimed, and that such a risk was so overwhelmingly obvious that Dr. Howard's knowledge of it can be inferred. Self, 439 F.3d at 1231, 1235; Steele, 82 F.3d at 178-179; Higgins, 8 F.Supp.2d at 830-831.

Despite the plaintiff's allegations, there is no evidence to prove even that Dr. Howard's conduct in prescribing Naprosyn was below the applicable standard of care, much less that it demonstrated the knowing infliction of harm. It is without a doubt that the pertinent standard of care, as well as causation, is outside the common knowledge of a jury, because it involves a complex analysis of the factors affecting the prescription of pharmaceutical medication to a patient. See, e.g., Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (claim "boil[ed] down" to controversy over physician's decisions regarding prescription of medication, for which expert testimony was required); Grassis v. Retik, 25 Mass.App.Ct. 595, 599-600 (1988) (discussion concerning use of reference text in claim involving medication, concluding that text does not state "absolute rule of conduct"). Therefore, where the plaintiff alleges that a physician's medical determination was deliberately indifferent, the plaintiff must be prepared to present either direct evidence of the physician's actual knowledge, or credible circumstantial evidence showing that the risk was so obvious that knowledge can be inferred.

In this case, expert medical evidence is necessary because there is no alternative means to show that Dr. Howard's conduct was anything other than a medical treatment decision. This is the meaning of the Miltier court's finding that expert testimony was necessary to determine "the

10

threshold standard of medical care." Miltier, 896 F.2d at 852. The same principle is recognized in the McCabe court's distinction between allegations of denial of treatment and allegations of inadequate treatment. Where a plaintiff argues that a physician has made the wrong choice in treatment, he "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances[.]" Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), citing Williams v. Vincent, 508 F.2d 541, 543-44 (2d Cir.1974). Without such a showing, the plaintiff has done no more than express "mere disagreement" with the physician's treatment decision, for which no deliberate indifference can be found. Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); see, also, Rivera v. Alvarado, 240 F.Supp.2d 136, 143 (D.Puerto Rico 2003), citing Watson v. Caton, 984 F.2d 537, 5390540 (1st Cir. 1993) (disagreement between prisoners and doctors concerning medical treatment is not actionable).

Even if expert testimony is not required to prove an Eighth Amendment violation, courts must be wary of diluting the standard of proof necessary to prove the violation. Just as ordinary claims for medical malpractice should not be cast as Eighth Amendment claims, proof of an Eighth Amendment claim should not be less stringent than proof of a medical malpractice claim. Estelle, 429 U.S. at 106-107. Therefore, if expert testimony is not required to prove an Eighth Amendment violation against a physician, the standard for proving such a violation must be so stringent that it requires proof of neglect so wanton as to be obvious to a lay person. Gaudreault, 923 F.2d at 208. The standard of obviousness, however, also must not be diluted. If the plaintiff has not presented an "exceptional case" that would allow a medical malpractice claim to go forward without expert testimony, such a case should not be considered capable of supporting an Eighth Amendment claim. Haggerty, 344 Mass. at 139; see, also, Dias v. Vose, 865 F.Supp. 53, 57 (D.Mass. 1994) (noting that Eighth Amendment claim must allege more than negligence, and citing authority concerning need to show egregious mistreatment in order to prove deliberate

indifference); Perez v. Oakland County, 380 F.Supp.2d 830 839-840 and n.7 (E.D.Mich. 2005) (objective standard of Eighth Amendment claim requires showing of grossly inadequate care, but grossly inadequate care alone does not satisfy subjective standard, which requires showing awareness of and disregard for medical needs).

No such exceptional case exists here. The plaintiff's allegations and testimony represent his disagreement with Dr. Howard's treatment decisions, but they do not constitute medical evidence of inadequate treatment. Without first presenting some evidence that the treatment was inadequate, the plaintiff cannot support an Eighth Amendment claim against Dr. Howard.

**3.    There is no evidence that Dr. Howard was aware of the stomach problems the plaintiff experienced on August 26, 2001 prior to the time the plaintiff was taken to the hospital.**

As noted, Dr. Howard treated the plaintiff on August 7, 2001 and prescribed Naprosyn. There is no evidence that the plaintiff made any complaints to Dr. Howard between August 7, 2001, and August 26, 2001, and no evidence that Dr. Howard was informed that the plaintiff had any complaints concerning his stomach or concerning the medication he was taking until August 26, 2001, when he was informed that the plaintiff was being taken to the hospital. Therefore, Dr. Howard cannot be liable for deliberate indifference to the plaintiff's need for treatment for stomach complaints on August 26, 2001, because there is no evidence that he had subjective knowledge that the plaintiff had made any complaints concerning the medication or his stomach pain prior to August 26, 2001. Without evidence that Dr. Howard had knowledge of the plaintiff's condition and deliberately failed to treat it, the plaintiff cannot make out a claim for deliberate indifference to a serious medical need.

The lack of evidence of Dr. Howard's knowledge or involvement in the alleged denial of treatment is also true with respect to the plaintiff's allegations concerning crushed medications. Although the plaintiff alleges that the Naprosyn was crushed before administration, he has not

12

alleged that Dr. Howard was aware that the medication was crushed before administration. It should be noted that while there is a dispute concerning whether the medication was crushed, there is no dispute that Dr. Howard did not order the Naprosyn to be crushed, and that he was not aware of this conduct if it occurred. Both Dr. Howard and Nurse Whittemore testified that the pharmaceutical administration policy does not require crushing Naprosyn, and Nurse Whittemore testified that the Naprosyn was not crushed before being given to the plaintiff. Regardless of whether the medication was crushed, there is no evidence that Dr. Howard knew of, ordered, or approved the crushing of Naprosyn before it was given to the plaintiff.

>    **B.    Dr. Howard is Entitled to Summary Judgment on the Plaintiff's Claim for Relief Under Mass. G.L. c. 12, § 11I Because the Plaintiff Cannot Present Evidence Showing that Dr. Howard Violated the Plaintiff's Protected Civil Rights Through the Use of Threats, Intimidation, or Coercion.**

The Massachusetts civil rights statute, Mass. G.L. c. 12, §11I, provides a remedy against individuals who interfere with protected rights through "threats, intimidation, or coercion." Mass. G.L. c. 12, §11I; Planned Parenthood League of Massachusetts v. Blake, 417 Mass. 467, 473 (1994). The statute, originally enacted to combat racial harassment, is intended to reach not the deprivation of rights themselves, but the attempt to interfere with rights through coercive means. Bally v. Northeastern University, 403 Mass. 713, 718 (1989). Therefore, the plaintiff must show that a defendant used such inappropriate means of interference in order to make out a claim under the statute. The terms have been defined as follows:

> "'Threat' involves an 'intentional exertion of pressure to make another fearful . . . of injury or harm.' 'Intimidation' involves 'putting in fear for the purpose of compelling or deterring conduct.' And 'coercion' involves the 'application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" Anderson v. Boston School Committee, 105 F.3d 762, 766 (1st Cir. 1997), quoting Planned Parenthood League of Massachusetts v. Blake, 417 Mass. 467, 474 (1994).

The same facts that support summary judgment in Dr. Howard's favor on the deliberate indifference claim also support summary judgment on this claim. The evidence shows that Dr.

13

Howard examined the plaintiff on August 7, 2001, at which time he prescribed medication. There is no evidence or allegation that Dr. Howard threatened, coerced, or intimidated the plaintiff at that time, or at any time between August 7, 2001 and the plaintiff's transfer to the hospital on August 26, 2001.  There is no evidence whatsoever to suggest that Dr. Howard attempted to interfere with the plaintiff's rights at any time, nor is there any evidence suggesting that he subjected the plaintiff to "threats, intimidation, or coercion."  Thus, summary judgment is appropriate because the plaintiff will be unable to present evidence to establish this element of his claim at trial.

## IV. CONCLUSION

For the foregoing reasons, John B. Howard, M.D., respectfully requests that the Court grant summary judgment in his favor as to all counts of the plaintiff's Complaint.

                      Respectfully submitted,

                      /s/Edward F. Mahoney
                      _____
                      Edward F. Mahoney (BBO No. 546436)
                      Anthony R. Brighton (BBO No. 660193)
                      Attorneys for Defendant,
                       John B. Howard, MD
                      MARTIN, MAGNUSON, MCCARTHY
                       & KENNEY
                      101 Merrimac Street
                      Boston, Massachusetts 02114
                      (617) 227-3240

## **CERTIFICATE OF SERVICE**

I, Edward F. Mahoney, counsel for defendant, John B. Howard, MD hereby certify that on the 11th day of September, 2006, I served the foregoing by electronically forwarding a copy thereof, to:

Michael L. Tumposky, Esq.
Hrones & Garrity
Lewis Wharf-Bay 232
Boston, MA 02110-3927

Mark C. Gildea, Esq.
Clark, Balboni & Gildea
126 Belmont Street
Brockton, MA 02301

William P. Breen, Jr., Esq.
Eckert Seamans Cherin & Mellott, LLC
One International Place, 18th Floor
Boston, MA 02110

/s/Edward F. Mahoney
_____
Edward F. Mahoney (BBO No. 546436)
Anthony R. Brighton (BBO No. 660193)
Attorneys for Defendant,
 John B. Howard, MD
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA  02114
(617) 227-3240